```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

| | | |
|---|---|---|
| Robert Ross, Individually, and on behalf of all others similarly situated, | : : | Consolidated Case Nos. 2:05-cv-0819 2:05-cv-0848 2:05-cv-0860 |
| Plaintiff, | : | 2:05-cv-0879 2:05-cv-0893 |
| v. | : | 2:05-cv-0913 2:05-cv-0959 |
| Abercrombie & Fitch Company, et al., | : | 2:05-cv-0964 2:05-cv-0998 |
| | : | 2:05-cv-1084 |
| Defendants. | : | JUDGE SARGUS |

                        OPINION AND ORDER

    These securities cases are before the Court by way of Defendant Abercrombie & Fitch Co.'s motion to compel discovery filed on December 17, 2007.  The motion seeks an order compelling the lead plaintiff, City of Dearborn Heights Act of 345 Police and Fire Retirement System, to provide certain additional information which, according to Abercrombie, is relevant to the issue of class certification.  The motion originally sought information about the City's other investment activity, but the parties have advised the Court that they are likely to resolve that issue among themselves.  The remaining issue is whether the City must disclose information about certain persons who may have provided the City with the facts underlying certain allegations in the complaint.  For the following reasons, the motion will be denied.

                                 I.

    The parties agree on the relevant facts.  Interrogatories six and seven of Abercrombie's first set of interrogatories asked the City to identify each person, each document, or each other source of information that supported the allegations in

paragraphs 4, 10, 11, 50, 112, and three subparagraphs of paragraph 89 of the complaint.  Abercrombie separately requested the City to produce all documents which supported those same allegations as well as any documents reflecting communications between the City and its sources of information.

The City generally objected to both interrogatories but provided the following substantive answer: "[A]ll witnesses of whom it is aware that may have knowledge of the referenced allegations have been identified in its Rule 26 initial disclosures."  It reiterated its general objection to these inquiries in its response to the document request, but added that any documents or communications with sources about those allegations were protected by either the work product or attorney-client privilege.  The City's initial Rule 26 disclosures identified 84 witnesses (all of whom are former Abercrombie employees) who have relevant knowledge concerning its claims.  In correspondence, counsel for the City stated that although all of the persons who provided information in support of the complaint were identified in the initial disclosures, the City was under no obligation to specify which persons provided information in support of specific allegations found within the complaint.  The question is whether the City can invoke the work-product privilege in support of its refusal to answer Abercrombie's inquiries on this subject.

II.

It is important to note at the outset that the issue here is not whether the City is entitled to conceal from Abercrombie the identity of those witnesses whom it relied upon in crafting the complaint.  It has already provided their names in its initial disclosures.  That fact alone distinguishes this case from, for example, <u>Brody v. Zix Corp.</u>, 2007 WL 1544638 (N.D. Tex. May 25, 2007), where it appeared that the plaintiff objected to any

disclosure of the names of the confidential sources who supplied information supporting specific allegations in the complaint. The holding of that case - that the names of witnesses who "have knowledge of facts relevant to a claim or defense ... are clearly within the scope of permissible discovery and must be revealed," id. at *2 - is hardly controversial.  The issue in this case, however, is much more complex.

Leaving aside for the moment the fact that, up to this point, Abercrombie has asked only for the names of witnesses whom the City relied on in making a few key allegations in the complaint, the issue is this: May any party in litigation force the opposing party not only to comply with Rule 26(a)(1) by disclosing the names of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses," but also to state (1) which of those persons the opponent interviewed when that party was drafting its pleading, and, even more specifically, (2) which of those persons provided the information underlying specific paragraphs or subparagraphs of that pleading?  Because requiring such disclosures would unnecessarily intrude on the work product process, the Court holds that Abercrombie is not entitled to any further information on this subject.

### III.

At its heart, the work product privilege provides space for an attorney to think, strategize, and recommend without fear that the essential parts of his or her thought processes will be laid bare for opposing counsel.  Certainly, a part of the rationale for the doctrine is to prevent opposing counsel simply from piggy-backing on the work done by others, but the more important theoretical justification for having a work product privilege at all relates to this concept of "working space."  As the Supreme Court noted in Hickman v. Taylor, 329 U.S. 495, 510-11 (1947),

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.  That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways .... [If] [a]n attorney's thoughts, heretofore inviolate, would not be his own .[...] [i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

Drafting a pleading - deciding exactly what to allege and how to allege it - is a quintessential function of a litigating attorney.  That attorney makes key strategic decisions about whom to interview in preparing that pleading, and whose information is reliable enough to persuade the attorney that he or she may aver a fact provided by that witness without violating Rule 11's mandate that all facts alleged "have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ...."  It therefore seems beyond dispute that if an attorney has to tell opposing counsel exactly whom he or she chose to interview when preparing a pleading, and which information obtained from those interviews was deemed worthy enough to support each specific allegation within that pleading, there will be a substantial intrusion upon the attorney's "working space."  Further, the Court sees no practical distinction between asking an attorney to say which witness or witnesses supported specific allegations in

-4-

a pleading and asking that attorney to disclose the contents of any statement taken from the witness, together with the attorney's mental impression concerning the credibility of that witness's statement. Such mental impressions are not only unquestionably work product but have been given a heightened level of protection from disclosure. See, e.g., In re Antitrust Grand Jury, 805 F.2d 155 (6th Cir. 1986).

None of the cases cited by Abercrombie directly reject this analysis. Abrecrombie's two best cases, In re Harmonic Inc. Securities Litigation, 245 F.R.D. 424 (N.D. Cal. 2007) and Miller v. Ventro Corp., 2004 WL 868202 (N.D. Cal. April 21, 2004), both involved situations where, for whatever reason, the attorney who drafted the complaint chose to allege in the complaint itself that certain allegations were based on statements from specific confidential witnesses (five in one case, and 22 in the other). Thus, the attorney made at least a partial disclosure of protected information. Miller, upon which Harmonic heavily relied, reached its result in part on the alternative rationale that any work product protection attaching to the list of names of the 22 witnesses in question was overcome by the defendants' substantial need for the information and the difficulty involved in culling those names from a list of at least 165 potential witnesses. The court noted that the case was on a "compressed" discovery schedule and that it simply would not be possible for the defendants to interview that many witnesses to find out who the key ones were. It also relied on a case, cited as In re Northpoint Communications Group, Inc., Securities Litigation, 221 F.Supp. 2d 1090 (N.D. Cal. 2002), for the proposition that when a plaintiff attempts to satisfy the pleading requirements of the Private Securities Litigation Reform Act by "showcasing" statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are. These

decisions are entirely consistent with the dual propositions that partial disclosure of information protected by the work product doctrine may constitute a waiver, and that a party is not permitted to use such doctrines as both a shield and a sword. Cf. In re Echostar Communications Corp., 448 F.3d 1294 (Fed. Cir. 2006). Those considerations come into play, however, once work product protection is found in the first instance.

This Court is persuaded by the reasoning above, and by decisions such as In re MTI Technology Corp. Securities Litigation II, 2002 WL 32344347 (C.D. Cal. June 13, 2002), that the disclosures Abercrombie has requested in this case are "at the heart of the work product rule" and that counsel should not be forced to make those disclosures absent either a waiver of the privilege or a showing of need and hardship sufficient to overcome it. Further, the work product protection is particularly strong here (and stronger than in some of the cases cited with approval in MTI Technology) because Abercrombie has asked not just for a list of witnesses whom counsel interviewed in order to prepare the complaint - a request that some of those decisions denied on work product grounds - but for information that would link specific witnesses to specific allegations.

Abercrombie's justification for overcoming the work product privilege here is tied to its belief that without such information, it will be required to depose or interview in excess of eighty witnesses to find out what support may exist for certain allegations in the complaint. The Court does not view that as a substantial hardship in a case of this magnitude, especially when discovery is in its infancy and it is impossible even to predict when the first wave of document production will be substantially complete. Further, the allegations of the complaint about which Abercrombie has inquired are pleaded with a high degree of specificity. Presumably, many of the former

Abercrombie employees whose names appear on the initial disclosures can be ruled out as sources of this information either because of dates of employment, where they were located at the time of the alleged actions, or the positions they held.

The mere fact that counsel may have to do some investigative work to determine which witnesses have knowledge of which relevant facts is clearly insufficient to justify an intrusion into the particulars of how opposing counsel structured their interviews and how much credence they gave to the statements of individual witnesses.  This is especially true where nothing about the amended complaint suggests an effort to bolster its credibility through targeted references to confidential sources.  Thus, there is no inherent unfairness created here by such pleading methods.  Rather, this appears to be a garden-variety situation where plaintiff's counsel interviewed some number of witnesses before preparing a complaint and based the allegations in the complaint on that and other information.  While counsel may not withhold either the names of witnesses with relevant information or the location of relevant documents - and that has not happened here - they simply cannot be compelled to give opposing counsel all of the details of how they decided to plead each allegation in the complaint.  Defense counsel can clearly replicate the process by interviewing or deposing the same universe of witnesses, and there is neither a substantial need for them to find out more about the other side's strategies and thoughts, nor an undue hardship if they do not.

IV.

For the foregoing reasons, the Motion of Defendant Abercrombie & Fitch Co. to Compel Discovery (#166) is denied.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R.

Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge