```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION


Robert Ross, Individually,     :   Consolidated Case Nos.
and on behalf of all others        2:05-cv-0819
similarly situated,            :   2:05-cv-0848
                                   2:05-cv-0860
        Plaintiff,             :   2:05-cv-0879
                                   2:05-cv-0893
    v.                         :   2:05-cv-0913
                                   2:05-cv-0959
Abercrombie & Fitch Company,   :   2:05-cv-0964
et al.,                            2:05-cv-0998
                               :   2:05-cv-1084
        Defendants.
                               :   JUDGE SARGUS
```

OPINION AND ORDER

These securities cases are before the Court to resolve the securities plaintiff's motion to compel discovery concerning the Special Litigation Committee report. The background of that report is described in detail in the Court's Opinion and Order of March 14, 2008 and will not be unnecessarily repeated here. For the following reasons, the motion will be denied.

I.

In its March 14, 2008 Opinion and Order, the Court granted additional discovery concerning the Special Litigation Committee report to the derivative plaintiffs. Those plaintiffs had already been provided with a copy of the report in connection with the motion to dismiss the derivative actions. By contrast, the plaintiffs in the securities cases have received neither a copy of the report nor any additional discovery concerning the process followed by the committee or the materials gathered by the committee as part of its preparation.

Clearly, the report itself and the materials gathered by the committee in connection with the preparation of the report are

relevant to plaintiffs' claims.  There is a substantial overlap between the claims of the private securities plaintiffs and the claims of the derivative plaintiffs which are addressed in the report.  The dispute between the parties centers not on the relevance of these materials but upon Abercrombie's assertion of the attorney-client and work product privileges for them, and the plaintiffs' insistence that any applicable privileges have been waived.  Each party claims that the Court of Appeals for the Sixth Circuit has decided the key issues in favor either of disclosure of such materials, see In re Columbia/HCA Healthcare Corp. Billing Practices Litigation, 293 F.3d 289 (6th Cir. 2002), or in favor of protecting them from disclosure.  See In re Perrigo Co., 128 F.3d 430 (6th Cir. 1997).  Thus, the primary focus of this Opinion will be the applicability of the two privileges to the Special Litigation Committee report and associated documents in light of these two decisions.

II.

Logically, the first issue to be addressed in any case where one party claims that any applicable privileges have been waived is whether the privileges attach to the requested documents in the first instance.  If not, there is no need to reach the waiver issue.  Plaintiffs present a brief argument in their motion that Abercrombie has not established the fundamental prerequisites needed to support a finding that the report and associated documents either contain attorney-client privileged communications or are protected by the work product doctrine.  In response, Abercrombie cites Perrigo as authority for the proposition that these documents are privileged.  Plaintiffs do not press the issue further in their reply brief.  Given the fact that these documents appear to have been prepared exclusively for use in litigation (i.e. the derivative action) either at the request of or with the direct participation of attorneys, it

-2-

seems reasonable to conclude that they fall within the scope of the work product doctrine.  Moreover, some of them are clearly attorney-client communications.  Since the waiver arguments made are largely the same for both privileges, the Court will now turn to the question of whether anything Abercrombie has done thus far with either the Special Litigation Committee report or the documents prepared specifically for the Committee (as opposed to pre-existing documents reviewed by the Committee, which, of course, cannot acquire privileged status simply because they are used by a committee whose final report may be privileged) has waived any applicable privilege which might otherwise prevent the plaintiffs from obtaining these documents through discovery.

                             III.

   The primary way in which, according to plaintiffs, Abercrombie waived any privileges for the report and associated documents was the production of the report to the derivative plaintiffs when it filed its motion to dismiss.  Although the motion was filed under seal, it was necessary for Abercrombie to serve the derivative plaintiffs with a copy of the report so that they could adequately respond to the arguments presented in the motion.  Plaintiffs contend that any disclosure of a privileged document to someone other than the holder of the privilege must be characterized as an effort to "selectively waive" the privilege, and that such selective waivers have been rejected by the Court of Appeals.  Thus, the Court must examine the circumstances and legal landscape underlying the disclosure of the report to the derivative plaintiffs.

    The pertinent legal landscape is set forth in detail in the Court's March 14, 2008 Opinion and Order.  Under Delaware law, a corporation whose shareholders have filed a derivative action on its behalf is entitled to request dismissal of that action if, in the view of a disinterested director or committee of directors,

pursuit of the action is not in the corporation's best interests. See Zapata Corp. v. Maldonado, 430 A.2d 779 (Del. 1981). Any motion for dismissal is typically accompanied by a report from the director or committee setting forth the basis for the conclusion that the corporate interests are not being advanced by the litigation in question. The court to which the motion is directed must, of course, have access to the report in order to discharge its duty to insure both that the request for dismissal is being made in good faith and by a truly independent director or committee, and that sound principles of business judgment support the request. Zapata, 430 A.2d at 788-89. Additionally, the parties who filed the derivative action must be able to view the report (and, as the Court held in its March 14, 2008 Opinion, many of the documents associated with that report) in order to be able adequately to respond to the motion to dismiss. Abercrombie disclosed the report to the derivative plaintiffs in that context, although the motion to dismiss was filed under seal. Thus, the question is whether the disclosure of the report to the derivative plaintiffs under these specific circumstances waived any privileges that otherwise attached to the report.

    In In re Perrigo, 128 F.3d 430 (6th Cir. 1997), the Court of Appeals was presented with a mandamus petition directed to the United States District Court for the Eastern District of Michigan. The petitioner, Perrigo Company, was, like Abercrombie, named as a defendant both in a derivative action and in a private securities action which had been filed in the District Court. It moved for dismissal of the derivative action under a Michigan statute that operates in a similar fashion to the court-crafted Zapata rule. It did not, however, produce the report to the derivative plaintiffs, claiming privilege. The District Court held that the report had to be disclosed to the derivative plaintiffs because they had shown a substantial need

-4-

for it and demonstrated sufficient hardship if they were denied access to it.  The court also held that Perrigo was under no obligation to disclose the report to the private plaintiffs because they could not make a similar showing of need and hardship.  However, it went on to opine that once the report was filed with the court, it would become a public record and that anyone, including the private plaintiffs, could gain access to it.  Perrigo sought a writ of mandamus vacating that portion of the order, arguing that its ability to petition for dismissal of the derivative case should not be conditioned on its waiver of the right to claim that the report is privileged.

The Court of Appeals granted the writ.  In doing so, it addressed only the question of whether Perrigo, by submitting the report to the District Court as support for its motion to dismiss, necessarily waived any protection for the report and consented to have it become part of the public record. Concluding that the Michigan legislature could not have intended such a result, and that to hold otherwise would discourage an independent review committee from making or relying upon written reports for fear that they would become part of the public record, the Court held that the mere submission of the report in connection with the statutorily-prescribed procedure was not a waiver of privilege.  Id. at 441.  The Court left open the possibility, however, that after a decision was issued on the motion to dismiss, the District Court might find that the public's right to be informed of the basis of that decision would outweigh Perrigo's interests in keeping the report confidential, and it might therefore (after a hearing) order public disclosure of some or all of the report.  The Court of Appeals was not asked to review the correctness of the District Court's opinion that the private plaintiffs, independent of the public's right to access court filings, were not entitled to obtain the report and

associated documents through discovery.

Here, the private plaintiffs are not asking this Court to hold that the report became an open public record when Abercrombie filed it under seal in support of its motion to dismiss.  Therefore, the precise holding of Perrigo is inapplicable.  Nonetheless, Abercrombie cites it as evidence that the Court of Appeals would not imply a full-scale waiver of any applicable privilege simply because the report was submitted in support of a motion which Abercrombie not only had a right to file under applicable Delaware law, but which it was obligated to support by tendering the report to the Court and to the derivative plaintiffs solely for their use in connection with that motion.

In some sense, Perrigo can be read as endorsing the concept of a "selective" waiver of privilege, although the court denied that it was ruling on a question of selective waiver, see id. at 441 n.9m("we need not decide if we would approve of a 'selective' waiver in this case").  That decision did permit the privilege holder to disclose a privileged document to someone outside the scope of those to whom the document could properly be disclosed while still preserving the privilege, and under circumstances where the disclosure was made to advance the interests of the holder of the privilege.  In another sense, however, Perrigo can be read to say that the disclosure of the report under those unique circumstances is essentially involuntary, at least in the sense that once the corporation chooses to take advantage of the statutory procedure and move to dismiss the derivative case, it *must* thereafter file the report and disclose it to the derivative plaintiffs.  True, it could simply forego filing a motion to dismiss at all, but the Court of Appeals clearly concluded that the Michigan legislature did not intend to condition the right to file such a motion on the corporation's agreement to make public

the results of its investigation into the potential merit (or lack of merit) of the claims advanced in the derivative case.

Perrigo did acknowledge the general principle that any waiver of privilege is typically construed as a general waiver, and that selective or limited waivers of privilege are not ordinarily acknowledged by the courts.  The Court of Appeals reconfirmed that general understanding in the case relied upon by plaintiffs, In re Columbia/HCA Healthcare Corp. Billing Practices Litigation, 293 F.3d 289 (6th Cir. 2002).  There, the first disclosure of the documents in question was made to the Department of Justice in connection with a fraud investigation.  Columbia and the DoJ entered into an agreement stating that the production of the documents would not constitute a waiver of any applicable privileges.  Later, private parties sued Columbia based on the same conduct which the DoJ had investigated and asked Columbia to produce those documents which it had turned over to the DoJ.  Columbia resisted doing so, asserting that the documents were privileged and that its prior production of them was not a waiver.

The Court of Appeals disagreed.  Citing to Perrigo only in passing, and neither overruling nor attempting to distinguish it, the Court held that a party may not voluntarily share information with a government agency for its own benefit (i.e. as part of an effort to negotiate a favorable resolution in a governmental enforcement action) without waiving the privileges that otherwise would attach to that information.  The Court rejected both a line of cases that always permitted such "selective" waiver under similar circumstances and a line of cases finding a "middle ground," reasoning that a bright line rule rejecting selective waiver in any of its forms made the law more predictable, and that permitting selective waivers did nothing to protect the ability of clients to interact freely with their attorneys or to

seek legal advice.  The question then becomes, at least as the parties have briefed it, whether the Columbia/HCA decision applies to the type of disclosure made here, and whether, to the extent that Perrigo did recognize and validate a form of "selective waiver" under these specific circumstances, it is still good law.

                                IV.

It is perhaps not surprising that the parties have focused their arguments on Perrigo and Columbia/HCA.  There appear to be few, if any, other decisions from federal courts which address this issue.  Those which have done so can be distinguished.  For example, the court in Matter of Continental Illinois Securities Litigation, 732 F.2d 1302 (7th Cir. 1984) held that the public - in particular, the *Wall Street Journal* - was entitled to a copy of the Special Litigation Committee report which had been filed with the District Court, but only because the corporation had voluntarily offered the report into evidence at a public hearing without seeking the guidance of the court on the implications of doing so and had publicly discussed the contents of the report at that hearing.  Obviously, none of those things have yet occurred in this case.  Joy v. North, 692 F.2d 880 (2d Cir. 1982), upon which the Continental Illinois case relied, contains an unequivocal statement that the mere submission of the report to the court in connection with summary judgment proceedings waives any and all privileges and makes the report a matter of public record - a conclusion totally at odds with the holding of Perrigo.  State courts which have considered this issue have made similar rulings on the public records question, noting, as did the Perrigo court, that there may come a time when the report must be made public in whole or in part because it has formed the basis for an adjudication - see, e.g., Dreiling v. Jain, 151 Wash.2d 900, 93 P.3d 861 (2004) - but that reasoning is not

helpful in determining whether, at this juncture, the report is discoverable by any parties other than the derivative plaintiffs. If anything, that reasoning supports Abercrombie's assertion that until the Court actually makes an adjudication of the motion to dismiss and holds the type of hearing contemplated by Perrigo, there has been no waiver of any privilege because it is proper to maintain the report under seal.

  Considering all of these factors, the Court concludes that it must follow the Perrigo decision in deciding whether the mere filing of the report in support of the request to dismiss the derivative action is a waiver of applicable privileges.  If that act waived the privileges, there would have been no need for the Perrigo court to issue a writ of mandamus the effect of which was to prevent the report from becoming a public record the instant it was filed.  There would similarly have been no need for that court to direct that, at an appropriate time, a hearing be held, and that the privacy interests of the corporation be balanced against the public's right to know the basis of the District Court's decision.  The privacy interests in question are simply those protected by either the attorney-client or work product privileges, and if they had been waived by the filing of the report, there would be nothing to balance.  Because Columbia/HCA did not deal with the Perrigo scenario, which, as noted above, can be conceptualized as an involuntary disclosure of privileged materials (or, at the minimum, a disclosure that becomes mandatory upon the corporation's choice to exercise a right created for the benefit of its shareholders), and because the panel in Columbia/HCA neither had the authority to overrule a prior panel decision nor purported to do so, that decision does not compel a different result here.  At an appropriate time, the Court will follow Perrigo's directive to hold a hearing concerning how much, if any, of the report to make public.  Since

that time has not yet arrived, the report remains privileged and therefore not subject to discovery by the private securities plaintiffs.

V.

This decision does not end the discussion, however. Plaintiffs raise two additional arguments in support of their motion. First, they contend that to the extent the work product privilege applies, they can overcome the operation of that privilege by showing a substantial need for the documents in question and that they cannot obtain the same information absent undue hardship. Second, relying on a recent decision from the Delaware Court of Chancery, they contend that when the Special Litigation Committee report was disclosed to Abercrombie's other directors and their counsel, any applicable privileges were waived. Ultimately, neither of these arguments are persuasive.

In support of their effort to overcome the work product claim, plaintiffs argue that they need this information because it will undoubtedly be used by Abercrombie to defend itself against plaintiffs' claims, and that if plaintiffs are allowed to know "sooner rather than later" the bases of Abercrombie's defenses, they can save resources. Plaintiff's reply, doc. # 158, at 13. Additionally, they assert that it will be more expensive for them to obtain the equivalent of this information through the ordinary channels of discovery, and that incurring such expense is an undue hardship.

The problem with these arguments is that they apply to almost any case. It would certainly be easier for a party to obtain copies of the opposing party's work product in order to get a head start on understanding the defenses that will be raised, and far cheaper than pursuing the equivalent material through the standard discovery process. Those types of advantages are not sufficient to overcome the work product

-10-

doctrine.  Here, there is no reason to believe that any of the factual information set forth in the report will not be available to plaintiffs through discovery.  There is no indication that any of the key witnesses have become unavailable or that unforseen circumstances have arisen which would prevent plaintiffs from having the same access to witnesses and documents that the Special Litigation Committee and its counsel enjoyed.  Should something of that nature occur, plaintiffs are free to renew their argument that they are unable to procure this information either at all or without undertaking some avenue of discovery or investigation that is above and beyond what litigation ordinarily entails.  Based on the present record, however, plaintiffs' arguments about need and hardship lack merit.

Plaintiffs' other argument is based upon the recent case of Ryan v. Gifford, 2007 WL 4259557 (Del. Ch. November 30, 2007).  In that case, the corporation involved (Maxim) had apparently created a Special Committee to investigate certain alleged corporate wrongdoings (although it was not a Zapata commitee).  The plaintiffs in an action concerning these alleged actions sought a copy of the report and all communications between the committee and the attorneys who assisted in the preparation of the report.  In holding that the report was not privileged, the court, relying on factors identified in Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970), held that the communications were not privileged from disclosure to corporate shareholders because the information was largely unavailable to them from other sources.  Garner had concluded that the attorney-client privilege was not absolute in the context of a shareholder's request for information from the company in which he or she held stock because, in some situations, the privileged communications were made for the benefit of the shareholders and those shareholders can, upon a showing of good cause, put themselves in the

-11-

corporation's shoes and essentially become holders of the privilege.  Under the Garner analysis, waiver is irrelevant because the privilege never attaches in the first instance.  The plaintiffs here, however, do not appear to be making a "good cause" claim under Garner.

On the waiver issue, Ryan concluded that any privilege attaching to the report had been waived when the report was presented to Maxim's board of directors.  The court identified the "client" who held the privilege to be the Special Committee and not the corporation.  Therefore, members of the board of directors who were not also members of the committee were third parties to whom the report could not be disclosed without waiving privilege.   The court rejected any notion that the directors and the committee shared a common interest, noting that the committee had investigated allegations that the board members had themselves engaged in wrongdoing, and that the interests of the committee and the board were therefore adverse.  Ryan, 2007 WL 4259557, *3 n.8.

In a subsequent opinion, the Ryan court set forth additional background for its decision.  Ryan v. Gifford, 2008 WL 43699 (Del. Ch. Jan. 2, 2008).  That opinion makes clear that the action against Maxim was based on alleged backdating of stock options granted to, among others, members of Maxim's board of directors, that the committee (composed of a single director) was formed to investigate these allegations, and that he shared his conclusions with the other directors, many of whom were named defendants in the securities action, and the attorneys representing them in that case, apparently in order to assist them with their defense.  Maxim also disclosed details of the investigation to NASDAQ, in public press releases, and in various motions presented to the court, all of which were public filings.  The court described this activity as the "convenient and

-12-

selective invocation of the attorney-client privilege," id. at *4, and denied the defendants' request to certify the issue for interlocutory appeal.  The court also noted that its ruling under Garner that the information was not privileged at all had not been challenged and that it provided a completely independent basis for ordering disclosure of the report.  Thus, the discussion of the waiver question was unnecessary to the court's decision that the plaintiffs were entitled to obtain the report and associated information through discovery.  Id.

Apart from the fact that the entire discussion of waiver in the Ryan opinion is *dictum*, the Court must consider whether that analysis is persuasive.  Plaintiffs correctly argue that one fact which distinguishes this case from Perrigo is the absence, in that case, of any disclosure of the report to the other directors.  See Perrigo, 128 F. 3d at 438 (the committee did not "disclose any of the contents to the Perrigo Board and counsel").  Thus, the question becomes whether Perrigo is inapplicable to cases where that type of disclosure occurred - that is, that the holding of Perrigo would have been different had the report been shared with the other directors and their attorneys.

In the Court's view, this question is far too complex to resolve on the basis of the three short memoranda filed which urge the Court either to follow, or not follow, Ryan.  The crucial questions, which none of the parties have addressed in any meaningful manner, are, first, whether under the specific facts of this case - which are arguably very different than those presented in Ryan - do the Special Litigation Committee and the Abercrombie directors with whom the report was shared have a sufficient commonality of interest in the dismissal of the derivative action in a Zapata proceeding to permit the sharing of the report without waiver of the privilege; and, second, even if a traditional commonality-of-interest analysis would suggest they

-13-

do not, do the policy considerations identified in <u>Perrigo</u> (namely the desirability of allowing a corporation to take advantage of a <u>Zapata</u>-type procedure because it may procure a benefit both to the corporation and its shareholders) affect the analysis and favor permitting this additional disclosure without a waiver of the privilege?  On this record, the Court is simply unable to answer these questions.  Consequently, the Court expresses no view on them, other than to say that if plaintiffs wish to pursue their quest for the report and associated documents in advance of any <u>Perrigo</u> hearing, they must delve into these issues and present additional argument and briefing at a later date.

                                  VI.
     For the foregoing reasons, plaintiffs' motion to Compel Discovery (#156) is denied.

     Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

     This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


                                   /s/ Terence P. Kemp
                                   United States Magistrate Judge

                                 -14-