IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Robert Ross, Individually, and on behalf of all others similarly situated, | : : : | Consolidated Case Nos. 2:05-cv-0819 2:05-cv-0848 2:05-cv-0879 |
| Plaintiff, | : | 2:05-cv-0893 |
| | | 2:05-cv-0913 |
| v. | : | 2:05-cv-0959 |
| Abercrombie & Fitch Company, et al., | : | |
| | : | JUDGE SARGUS |
| Defendants. | : | |

OPINION AND ORDER

I. Introduction

In an order filed on April 22, 2008, this Court denied plaintiffs' motion to compel discovery. That motion asked the Court to order the disclosure of the report of a Special Litigation Committee which Abercrombie had commissioned to determine if pursuing a derivative action was in Abercrombie's best interests. The Court reasoned that it was bound by the Court of Appeals' decision in In re Perrigo Co., 128 F.3d 430 (6th Cir. 1997) to keep the report sealed given the posture of the derivative cases at that point - namely, that the report had been filed under seal in support of a motion to dismiss those cases, but the Court had not ruled on that motion. In a separate order issued on March 14, 2008, and applicable only to the derivative actions, the Court compelled Abercrombie to turn over to the plaintiffs in that case the documents relied upon by the Special Litigation Committee in preparing its report.

The Court has now dismissed the derivative actions based upon its determination that the report had been independently

prepared and set forth a reasonable basis for concluding that pursuing the derivative actions was not in Abercrombie's best interests. See Opinion and Order of March 12, 2009 (Doc. #311 in Case No. 2:05-cv-819). That Opinion and Order is part of the public record. See Order of March 27, 2009 (Doc. #323). Subsequently, on August 18, 2009, plaintiffs renewed their motion to compel production of that report and the related documents. Although styled as a motion to compel discovery, the central issues which it raises are (1) whether the report, which was filed under seal in the derivative actions, should now be made part of the public record, and (2) if so, whether the plaintiffs are entitled to obtain, through discovery in these securities cases, the documents underlying the report itself.

Following what it believed to be the procedure mandated by Perrigo, on November 16, 2009, the Court issued an Opinion and Order directing the Clerk to set the motion for a hearing. Ross v. Abercrombie & Fitch Co., 2009 WL 3855497 (S.D. Ohio November 16, 2009). That hearing was scheduled for December 11, 2009. On December 7, 2009, the Court held a pre-hearing conference. At the conference, all parties agreed that the issues raised by the motion could be resolved on the basis of written submissions unless something in the submission to be made by defendants convinced plaintiffs that a hearing would be needed. Defendants filed a brief on this issue, in lieu of a hearing, on December 9, 2009. Plaintiffs did not request a hearing after that brief was filed, but filed their own brief on December 15, 2009. The matter is thus ripe for decision.

## II. Framing the Issue

### A. The Special Litigation Committee Report

The Court first visited this issue shortly after the motion to dismiss was filed in the derivative actions. In Ross v. Abercrombie & Fitch Co., 2008 WL 1844357 (S.D. Ohio April 22,

2008), the Court, relying on Perrigo, held that the report was protected by both the attorney-client privilege and the work product doctrine and that the mere filing of the Special Litigation Committee's report was not cause for public disclosure of that report. The Court also noted that, if the issue arose after the Court made its decision on the motion to dismiss, "the Court will follow Perrigo's directive to hold a hearing concerning how much, if any, of the report to make public." Ross, 2008 WL 1844357, *5. As noted, the parties have elected not to have such a hearing but have briefed their positions on disclosure of the report.

In order to frame the issue, it is helpful to repeat some of the Court's discussion from the order setting the Perrigo hearing. There, the Court said:

> The courts in this country have recognized a long-standing common law right of public access to "judicial documents" - that is, documents relied upon by the courts in making decisions - in order that the public may know the basis for court decisions and be able to make an independent evaluation of whether the decisions are actually supported by the record. This is especially true for the federal courts. As the court stated in United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995), "[t]he presumption of access is based on the need for federal courts, although independent - indeed, particularly because they are independent - to have a measure of accountability and for the public to have confidence in the administration of justice." See also Rosado v. Bridgeport Roman Catholic Diocesan Corp.. 292 Conn. 1, 43, 970 A.2d 656, 681 (2009) (noting that "the presumptive right to public observation is at its apogee when asserted with respect to documents relating to matters that directly affect an adjudication"; Perrigo, 128 F.3d at 440 ("We recognize that the public has a right to copy and inspect judicial records"), citing, inter alia, Nixon v. Warner Communications, 435 U.S. 589, 597 (1978). Thus, the fact that the Court has made a decision on the basis of information contained in the Special Litigation Committee report is a significant factor to be considered in determining whether to unseal that

> report. See also In re Continental Illinois Securities Litigation, 732 F.2d 1302, 1315 (7th Cir. 1984) ("when the report is used in an adjudicative procedure to advance the corporate interest, there is a strong presumption that confidentiality must be surrendered").
>
> As always, when competing interests are involved, it is the Court's duty to weigh those interests before determining which result to reach. That is the teaching of Perrigo, which held that the district court had erred by ordering disclosure of the Special Litigation Committee report involved in that case without holding a hearing and weighing "the interests of the public against the interests of Perrigo in maintaining its privilege as to all or part of the Report." Perrigo, 128 F.3d at 440. That weighing must included factors such as "[t]he importance of the material to the adjudication, the damage disclosure might cause, and the public interest in such materials ...." Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982). Although these interests are difficult to weigh, that difficulty does not relieve the Court of its obligation to decide how strongly to value the competing interests implicated by either unsealing the report or keeping it (or parts of it) out of the public domain.

Ross, 2009 WL 3855497, *2.

In its latest brief, Abercrombie does not appear to disagree that there will be a point at which disclosure of the report is appropriate. However, it argues that "the proper way to strike the Perrigo balance under the circumstances of this case is to maintain the Report under seal until after the entry of final judgment in this class action." Defendant Abercrombie & Fitch Co.'s Brief Regarding Perrigo Factors, Doc. #360, at 1. Thus, the issue of prejudice from disclosure becomes much narrower - that is, the damage which Abercrombie claims will result from disclosure of the report is limited to what might happen were that disclosure to occur while the class actions are still pending. Further, its only arguments about prejudice to its interests are made in that context. Therefore, the Court will examine the potential injuries Abercrombie has identified to its

-4-

ability successfully to defend the class actions to see if any of them outweigh whatever interest the public might have in an earlier disclosure of the report.

B. <u>The Documents Supporting the Report</u>

Neither party has distinguished, in their briefs, the issues about unsealing the report itself from the issue of whether the underlying documents should be produced. The issues are somewhat distinct, however, for at least two reasons.

First, most, of not all, of the underlying documents were not filed in the derivative actions. Thus, the question here is not whether they should be made part of the public record in that case, following which the securities plaintiffs would, like any other member of the public, have access to them, but whether the Court should compel their production in the securities cases.

Second, the motion to compel production of the report, which the Court has been analyzing a motion to unseal it, has not technically been filed in the cases in which the report was filed under seal. The filing of the motion to dismiss which included the report pertained only to the derivative actions. These cases have been consolidated, but consolidated cases do retain their own identity for some purposes. Nevertheless, Abercrombie is the party with the interest in keeping the report sealed, and it is a party in both the securities and derivative cases, so it has had the opportunity to be heard on the issue of unsealing the report. Again, neither party has raised any procedural objections to the Court's consideration of this question in the context of the securities plaintiffs' motion to compel, so the Court will proceed to the merits of the issue. The Court does so notwithstanding the order of the Court of Appeals maintaining the report under seal. The Court agrees with plaintiffs that the order was a routine procedural order simply continuing this Court's prior sealing order, and that it does not represent

either an independent determination by the Court of Appeals about the propriety of that order, or a decision that divests this Court of jurisdiction to consider whether the order should be unsealed.

### III. Abercrombie's Interest in Non-Disclosure

Abercrombie has identified one primary interest in delaying the disclosure of the report and the underlying documents to the end of the case. It notes that the Court has already found that the report contains material or relies on material which is protected by the attorney-client privilege and material which is work product. If the plaintiffs are allowed to view the report and those materials while this adversary class action is still pending, those otherwise-privileged materials will be made available to plaintiffs for their use against Abercrombie in this case. However, at least one purpose of the attorney-client privilege is to encourage full disclosure of important facts to an attorney so that the attorney may give correct legal advice, without fear that the information disclosed to the attorney will be revealed to persons whose interests may be adverse to the client's. Further, the primary purposes of the work product privilege are to shield the attorneys' thought processes from opposing parties, and to prevent opposing parties from piggy-backing on the work done by others in preparing the case. According to Abercrombie, all of these important interests are dis-served by a disclosure while litigation is pending, whereas once the case has been concluded, much of the justification for withholding the information from members of the public - who happen to include the plaintiffs in these class action cases - will have dissipated. It makes the further point that, as a policy matter, allowing disclosure of this type of report when parallel securities litigation is pending will discourage companies from forming special litigation committees and filing

their reports in derivative actions for fear that the contents will be disclosed to plaintiffs in the securities litigation.

## IV. The Competing Interests in Disclosure

The interests favoring disclosure are those which are identified above and which have been discussed in the Court's prior orders. First and foremost is the public's interest in open access to judicial records, especially those which have formed all or part of the basis of a publicly-available decision. Second, plaintiffs point out that investor confidence will be furthered if the report is disclosed to them, because it supposedly supports the proposition that Abercrombie management acted appropriately notwithstanding the large amount of stock that was sold immediately prior to a steep drop in the price of Abercrombie's publicly-traded shares. While that may be so, the Court's primary interest is, of course, maintaining the long-standing tradition of public access to its records and decision-making process, which is so valuable for preserving public confidence in the court system.

## V. Discussion

In its prior orders, the Court has conducted a fairly extensive review of the case law on this subject. Much of that law is cited in Section II of this Opinion and Order. As the Court has also previously discussed, the general import of the key cases - particularly Joy v. North, In re Continental Securities Litigation, and Perrigo - is that disclosure of documents upon which the Court has relied in making a decision is the rule rather than the exception, and that the primary way in which a party may persuade the Court to deviate from that rule is to show specific prejudice from the disclosure of all or a portion of the materials in question. General claims of prejudice which focus on the entirety of the materials submitted under seal, rather than specific portions of those materials

which, if disclosed, would cause harm to some identifiable aspect of the defendant's business, are disfavored. It is true that the first two decisions do not appear to have been rendered in the context of parallel pending securities litigation, so that the potential for harm to the defendant should the plaintiffs in such litigation have access to the report and accompanying materials, was not considered. For the following reasons, however, the Court does not believe that those cases are any less persuasive.

First, the Court considers the nature of the materials that will be disclosed if the report is unsealed and the motion to compel production of the underlying materials is granted. Abercrombie represents that it has already produced to the securities plaintiffs, in discovery, all or substantially all of the documents relied upon by the SLC in making its report. Thus, it would not suffer any additional harm if the Court ordered the documents to be produced to these same plaintiffs. Second, certain depositions or interviews of witnesses will be produced. Given the volume of discovery which has occurred in this case, it seems extremely unlikely that the plaintiffs will discover new witnesses through this production, or that they would discover new lines of questioning to pursue. In further seems unlikely that these witness statements or depositions will reveal sensitive trial strategy. The statements were presumably taken as part of an objective inquiry into whether there was any basis for pursuing derivative actions against Abercrombie, and not to bolster Abercrombie's defense to the claims in these securities actions. Additionally, Abercrombie has not analyzed any of these statements or depositions separately nor suggested that there are any portions of them that, if the plaintiffs were to view them, would be either more likely or less likely to prejudice Abercrombie's ability to defend itself in these cases. In other words, although these statements or depositions may well be work

product, and the general reasons why work product should not be disclosed are well-known, Abercrombie has not made a specific showing that any of those evils would ensue from the disclosure of these particular witness statements or depositions.

That leaves the report itself. Again, the first point to be made is that Abercrombie has not identified any specific portion of the report which would be particularly prejudicial to its defense of the securities cases if disclosed. Judge Sargus' Opinion and Order dismissing the derivative actions makes clear that the report is favorable to Abercrombie to the extent that it concludes that none of the individual defendants committed any unlawful or unauthorized acts which would justify the maintenance of a derivative action based on those acts. The undersigned Magistrate Judge has also reviewed that report and does not believe that its release to the public, including the securities plaintiffs, will harm Abercrombie. Finally, even if there might be some incidental harm to Abercrombie's ability to defend these actions, it is not of sufficient weight to overcome the public interest in disclosure. Thus, having performed the balancing required by Perrigo to the extent that such balancing can be done on the basis of the parties' written submissions, the Court concludes that disclosure is necessary.

There are a few additional points to be made. First, Abercrombie argues that no member of the public has been clamoring for the release of these materials, so that delaying that release would not compromise the public interest. However, the practice of filing court documents in the public record is not dependent upon whether any specific member of the public has asked to see them. Further, there is wisdom in the adage that "old news is no news." The timing of reporting the news is sometimes crucial. As the Supreme Court has noted, "[l]ater events may crowd news of yesterday's proceeding out of the public

view." Gannett Co. v. DePasquale, 443 U.S. 368, 441 n.17 (1979) (Blackmun, J., concurring in part and dissenting in part). Delaying the release of records in which there is a public interest in disclosure may well have the effect of negating or diluting that interest, and there should therefore be sufficient reasons for the delay. The Court finds no such reasons here.

Further, the Court doubts that, as a practical matter, companies which are the target of both derivative actions and private securities litigation will be dissuaded from convening special litigation committees, and moving to have the derivative actions dismissed, simply because there is a likelihood that the committee's report and accompanying materials will become part of the public record, save for any portions of those materials which would impact the company's sensitive or confidential business interests or reveal information of a private and injurious nature. That risk would seem to pale in the face of the damage the company faces from the continuation of a derivative action that is unfounded and subject to dismissal at the company's request. It appears that many companies in Abercrombie's position have not requested that special litigation committee reports be sealed in the first instance and have simply filed them as part of the court record. For example, the dockets of the courts involved in these three cases which resulted in published opinions do not reflect that the special litigation committee report was ever sealed: In re ITT Corp. Derivative Litigation, 653 F.Supp. 2d 453 (S.D.N.Y. 2009); In re UnitedHealth Group Inc. Shareholder Derivative Litigation, 591 F.Supp. 2d 1023 (D. Minn. 2008); Madvig v. Gaither, 461 F.Supp. 2d 398 (W.D.N.C. 2006). In at least one of those cases, In re UnitedHealth Group Inc. Shareholder Derivative Litigation, it appears that private securities litigation was also pending when the report was filed. Consequently, the Court is not persuaded

-10-

that its decision runs counter to the public policy reflected in statutes which permit a corporation which is the target of shareholder derivative litigation to use the special litigation committee procedure to defend against that type of suit.

Last, as the Court has noted above, the parties' briefs lump together the issues of whether the report should be unsealed, and whether production of the underlying documents should be compelled. The Court has analyzed both, and finds no reason to unseal the report but deny the plaintiffs access to the underlying documents. The Opinion and Order of March 14, 2008 sets for the reasons why that procedure would not have been fair to the derivative plaintiffs, and those considerations apply with equal force here. Although at least one court has declined to order production of documents supporting a special litigation committee report which was in the public domain (having been publicly released by the company itself), see In re Vioxx Products Liability Litigation, 2007 WL 854251 (E.D. La. March 6, 2007), that court reasoned that release of those documents was not warranted because the company had not used the report in connection any pending litigation, and disavowed any intention of doing so in the future. The court indicated it would reconsider its decision if "the ... Report is sought to be used offensively in the litigation" or if its author sought to testify. Id. at *5. Here, the report has been used in litigation for Abercrombie's own purposes, so fairness dictates that the underlying documents be produced once the report is made public.

One final note. In its earlier orders discussing this issue, the Court was concerned that the "reliance on court documents" justification for unsealing these records might be viewed as automatically requiring the public disclosure of special litigation committee reports, including otherwise privileged or work-product protected matters, every time the

Court decides a motion to dismiss which has been supported by these types of submission.  The Court's reading of precedent suggests that, indeed, that will occur most of the time, and that it is simply one of the factors that a defendant in a derivative action must take into account when it files such a motion.  However, Perrigo certainly leaves it open for any defendant to show that *specific* disclosures of information found within the special litigation committee report or supporting materials could be harmful and that their non-disclosure does not significantly impact the countervailing public interest.  Because no such showing has been made here, the Court concludes that disclosure of all of the materials is required.

## VI.  Disposition

Based on the foregoing, the Court grants plaintiffs' motion to compel (#337).  However, the Court also recognizes that once the report is unsealed and viewed by plaintiffs and the public, and the underlying documents are produced in discovery, any order re-sealing them because this order was issued in error would be a futile act.  Therefore, the Court stays this order for the fourteen days during which a motion to reconsider can be filed, and will entertain a further motion to stay should such a motion be made.

## VII.  Appeal Procedure

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set

aside any part of this Order found to be clearly erroneous or contrary to law.

>  /s/ Terence P. Kemp
>  United States Magistrate Judge